**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STACY SOE,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD UNIVERSITY HOSPITAL<br>2041 Georgia Avenue NW<br>Washington, D.C. 20060,<br><br>and<br><br>DISTRICT OF COLUMBIA NURSES ASSOCIATION<br>1220 12th Street SE, Suite G10<br>Washington, D.C. 20003,<br><br>Defendants. | Civil Action No. 26-3426<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

## INTRODUCTION

1. Plaintiff Stacy Soe[1] ("Plaintiff") is a transgender woman. Plaintiff has been employed as a Registered Nurse by Defendant Howard University Hospital ("HUH") and has been a member of her labor union, Defendant District of Columbia Nurses Association ("DCNA"), for many years.

2. As part of her compensation, Plaintiff has received medical insurance benefits through the Howard University and Hospital Union Medical Benefits Plan (the "Plan"), a self-funded, large group union plan jointly negotiated between HUH and DCNA during the collective bargaining process. The Plan is administered by third-party administrator, Cigna Health and Life Insurance Company ("Cigna"), under authority delegated to it by HUH, including the authority to

[1] Stacy Soe is a pseudonym used in this Complaint to protect Plaintiff's privacy. Plaintiff will concurrently file a motion to proceed pseudonymously.

process claims, determine whether certain requested services are medically necessary, and make coverage decisions.

3. Plaintiff's legal sex is female. Although she was assumed to be male at birth, she understood from a young age that she is female and, in early adulthood, transitioned to living as the woman that she is in every aspect of her life. Most of Plaintiff's coworkers and patients have only known her as a woman.

4. As part of her gender transition, Plaintiff has, under the care of her medical providers, received gender-affirming health care, including feminizing hormone therapy, to better align her outward appearance with her female sex.

5. Several years ago, Plaintiff's treating medical providers and therapist concluded that Plaintiff needed gender-affirming facial reconstruction surgeries to correct the incongruence between certain male-appearing facial features and the female sex she has lived in all aspects of her life for decades. Like other gender-affirming surgeries and treatments, gender-affirming facial reconstruction procedures are generally accepted under the prevailing standards of care for transgender health as safe, effective, and clinically indicated treatments for transgender patients as part of a medically supervised gender transition.

6. Despite the consensus of Plaintiff's medical providers that feminizing facial surgery would treat the symptoms of her gender dysphoria related to her face and alleviate related distress, and Plaintiff's clinical readiness for these treatments under the applicable standards of care, Plaintiff has been denied coverage for these procedures under the Plan based on a discriminatory categorical exclusion that Defendants' third-party administrator, Cigna, applies to claims under the Plan. Contrary to the prevailing standards of care, the categorical exclusion falsely labels gender-affirming facial reconstruction as "not medically necessary" when sought by transgender people

for "gender reassignment." This denies Plaintiff and other transgender Plan participants the opportunity for an individualized medical necessity review afforded to non-transgender participants seeking comparable services.

7. Plaintiff brings this civil rights action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), against HUH and DCNA (collectively, "Defendants"), to challenge the past coverage denial for gender-affirming facial surgeries, and her continuing inability to obtain coverage for those treatments, in violation of Title VII's prohibition on discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of sex.

8. Through this action, Plaintiff seeks (1) a declaratory judgment that the categorical exclusion of coverage for gender-affirming facial reconstruction procedures unlawfully discriminates against her because of sex; (2) an injunction requiring Defendants to direct Cigna to remove the categorical exclusion and review requests for gender-affirming facial surgeries for individualized medical necessity like other gender-affirming services; (3) compensatory damages for the emotional distress, health consequences from untreated gender dysphoria, and other injuries resulting from her inability to obtain Plan coverage for the requested surgeries; (4) punitive damages in an amount sufficient to deter future discriminatory conduct; (5) her reasonable attorneys' fees and costs (including expert witness fees); and (6) such other relief as this Court deems just and equitable.

**PARTIES**

9. Plaintiff Stacy Soe is an adult resident of Prince George's County, Maryland.

10. Defendant HUH is a teaching hospital affiliated with Howard University. HUH is a private nonprofit corporation incorporated in the District of Columbia. HUH's headquarters and

primary campus are located at 2041 Georgia Avenue NW, Washington, D.C. 20060. Plaintiff is and at all relevant times was employed as a Registered Nurse at HUH.

11. Defendant DCNA is a labor union for registered nurses who live or work in the District of Columbia. DCNA is a private nonprofit corporation incorporated in the District of Columbia. DCNA's principal place of business is at 1220 12th Street SE, Suite G10, Washington, DC 20003. Through its HUH collective bargaining unit, DCNA represents registered nurses employed at HUH in labor negotiations with HUH. Plaintiff is and at all relevant times was a member of DCNA.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a), and 42 U.S.C. § 2000e-5(f)(3).

13. This Court is authorized to order declaratory relief under 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because both Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this District.

## FACTS

### *Background on Plaintiff and Her Gender Transition*

15. Plaintiff is a transgender woman.

16. Plaintiff's legal sex, as reflected on her government-issued identity documents, is female.

17. Plaintiff was assumed to be male at birth and was raised as a boy. Plaintiff knew herself to be female from an early age and, in early adulthood, began her gender transition to live

as a woman in all aspects of her life. She began her transition approximately twenty-five years ago.

18. Plaintiff has worked as a Registered Nurse at HUH for over a decade.

19. Plaintiff has been diagnosed with gender dysphoria, a condition defined by "[a] marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months' duration," as manifested by factors including "[a] marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics," "[a] strong desire to be rid of [those] characteristics," and "[a] strong desire for the primary and/or secondary sex characteristics of the other gender." *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* (5th ed., text rev. 2022). "The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Id.* at 513.

20. Male secondary sex characteristics include neck and facial features such as an Adam's apple; wider and more prominent jawbone, chin, brow, and nose; and wider face shape relative to those with female secondary sex characteristics.

21. To further her gender transition and treat her gender dysphoria, Plaintiff has received gender-affirming health treatments, including feminizing hormone treatments, to align her outward appearance with her female sex and gender.

22. Plaintiff, who experienced male endogenous puberty, developed male-appearing facial secondary sex characteristics that have contributed to her clinically significant gender dysphoria for many years.

23. In 2022, Plaintiff's primary care providers and treating therapist determined that, despite the efficacy of other treatments in reducing her gender dysphoria, Plaintiff's male-

appearing facial features were causing her considerable, clinically significant distress that impaired her social and occupational functioning. Her sex-incongruent facial features, left untreated, have caused Plaintiff to experience heightened symptoms of gender dysphoria. To treat these symptoms and further her gender transition, Plaintiff's providers recommended that she obtain gender-affirming facial reconstruction surgeries to feminize certain facial features and further align her outward appearance with her female sex and gender identity.

24. Gender-affirming facial reconstruction surgeries are generally accepted as safe, effective, and clinically indicated treatments for gender dysphoria for transgender people under the prevailing standards of care for transgender health. When performed in this context, these surgeries, like other recognized gender-affirming surgeries such as breast or genital reconstruction, are not cosmetic because they are intended to treat a medical condition and are not performed primarily for the purpose of improving one's appearance. For many transgender people, gender-affirming facial reconstruction is the only accepted medical procedure to address the incongruence between one's lived sex and gendered facial characteristics, and the gender dysphoria that results from this incongruence.

25. For transgender women like Plaintiff who have gone through endogenous male puberty and developed secondary sex characteristics of the face and neck associated with men, such as developing an Adam's apple or a pronounced brow or jawline, gender dysphoria arising from those characteristics can be severe.

26. Gender-affirming facial reconstruction procedures are effective at alleviating this distress, in part because they minimize the sex-based discrimination, harassment, and hostility that transgender people often experience when they are perceived to be transgender because of their gender-incongruent facial features.

***The HUH Medical Benefits Plan***

27. As an HUH employee, Plaintiff has been enrolled in the Plan. The Plan is a self-funded, large group plan. The Plan terms were jointly negotiated between HUH and DCNA during the collective bargaining process. Amendments to the Plan terms are generally the result of collective bargaining between HUH and DCNA.

28. Defendant HUH is the Plan sponsor. The Plan is administered by Cigna as the Plan's third-party administrator, under authority delegated to it by HUH to process claims and administer benefits consistent with the Plan terms.

29. In administering employer health plans, Cigna applies its own clinical coverage policies unless the plan sponsor has defined covered benefits more narrowly or more expansively than the default Cigna policies. Because the HUH Plan is silent on gender-affirming care, the Plan incorporates Cigna's standard coverage policy for gender-affirming facial surgeries and other procedures. Under Cigna's coverage policy for gender-affirming care, Medical Coverage Policy 0266 ("MCP 0266"), "[h]ead and/or neck feminization/masculinization procedures . . . are considered not medically necessary under standard benefit plan language." These procedures are categorically excluded from coverage without consideration of a transgender individual's medical need or readiness for those services.

30. The MCP 0266 exclusion of coverage for gender-affirming facial reconstruction (the "Exclusion") conflicts with the definition of "Medically Necessary/Medical Necessity" used by Cigna and contained in Plan documents. Those terms are defined as:

> Health care services, supplies, and medications provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, condition, disease or its symptoms, that are all of the following as determined by a Medical Director or Review Organization:

- required to diagnose or treat an illness, Injury, disease or its symptoms;
- in accordance with generally accepted standards of medical practice;
- clinically appropriate in terms of type, frequency, extent, site and duration;
- not primarily for the convenience of the patient, Physician or Other Health Professional;
- not more costly than an alternative service(s), medication(s) or supply(ies) that is at least as likely to produce equivalent therapeutic or diagnostic results with the same safety profile as to the prevention, evaluation, diagnosis or treatment of your Sickness, Injury, condition, disease or its symptoms; and
- rendered in the least intensive setting that is appropriate for the delivery of the services, supplies or medications. Where applicable, the Medical Director or Review Organization may compare the cost-effectiveness of alternative services, supplies, medications or settings when determining least intensive setting.

31. Under this definition, gender-affirming facial reconstruction procedures are automatically considered "not medically necessary" and, therefore, never eligible for coverage.

32. When clinically indicated for an individual transgender person, gender-affirming facial reconstruction procedures are provided for the purpose of treating a medical condition, adhere to the generally accepted standards of care, and are not primarily for the convenience of the patient or provider. There are no generally accepted alternative services available to effectively treat gender dysphoria arising from secondary sex characteristics of the face, so no less costly alternatives exist.

33. Despite the Exclusion, Cigna permits plan sponsors to affirmatively cover these services in their plans, and reviews requests for these services for individualized medical necessity in such plans rather than applying the Exclusion. Cigna itself is required to cover gender-affirming facial reconstruction in many state-regulated plans that treat comparable categorical exclusions as discriminatory, including under non-ERISA employer plans subject to District of Columbia law.

34. Nevertheless, Defendants have never requested that Cigna cover these services under the Plan. Doing so would remove the discriminatory barrier to care imposed by the

enforcement of the Exclusion for Plaintiff and other Plan participants. Accordingly, Cigna, in administering the Plan on HUH's behalf, applies the Exclusion in MCP 0266 to Plaintiff and other transgender Plan participants regardless of their ability to demonstrate medical necessity and surgical readiness under the applicable standards of care on an individualized basis.

***Plaintiff's Coverage Requests for Gender-Affirming Facial Reconstruction***

35. Plaintiff receives her primary medical care and psychotherapy at Whitman-Walker Health ("Whitman-Walker"), a community health center in Washington, DC, specializing in care for the transgender, queer, lesbian, bisexual, and gay communities.

36. In 2022, Plaintiff's treating psychotherapist at Whitman-Walker, Sarah Lawson, MSW, LICSW, determined that Plaintiff was experiencing significant distress related to her male-appearing facial characteristics. Lawson determined that for at least two years, Plaintiff's male-appearing physical facial features had caused her to suffer acute emotional distress on a daily basis and had a negative impact on her mental health and psychosocial functioning.

37. Lawson assessed Plaintiff's readiness for gender-affirming facial reconstruction based on the prevailing standards of care. She determined that gender-affirming facial reconstruction was medically necessary and clinically appropriate for Plaintiff, concluding that these surgeries would treat Plaintiff's gender dysphoria related to her face and significantly improve her quality of life and overall functioning. Lawson further determined that these procedures would decrease the negative impact of discrimination Plaintiff faces for being transgender because of the incongruence between her male-appearing facial features and her female gender identity. Lawson concluded that, without gender-affirming facial surgery, Plaintiff would continue to experience emotional distress, social anxiety, and impaired social functioning.

38. Also in 2022, Plaintiff's primary care provider, Megan Caine, DNP, FNP-C, determined that gender-affirming facial reconstruction was a clinically indicated treatment for her gender dysphoria and would allow her to live authentically as a woman.

39. Plaintiff's treating providers at Whitman-Walker came to this determination using the World Professional Association for Transgender Health ("WPATH") Standards of Care for the Health of Transgender and Gender Diverse People ("WPATH Standards of Care"), the prevailing and generally accepted standard of care for transgender health. The WPATH Standards of Care recognize that gender-affirming facial reconstruction, when used as a treatment for gender dysphoria, is considered reconstructive, not cosmetic, because its primary purpose is to treat a health condition and improve functioning.

40. In August 2022, Whitman-Walker providers referred Plaintiff to two in-network surgeons in the Washington, DC area who specialize in gender-affirming facial surgeries for transgender women. Plaintiff had surgical consultations with Jerry Chao, MD, and Jacob E. Kuperstock, MD.

41. Both Dr. Chao and Dr. Kuperstock concurred with Plaintiff's treating providers that several gender-affirming facial reconstruction procedures were clinically indicated for Plaintiff and that she met the surgical readiness criteria for those procedures.

42. Dr. Chao, however, refused to submit a prior authorization request because he knew these services were subject to the discriminatory Exclusion under the Cigna-administered Plan, and that seeking prior authorization would therefore be futile.

43. In December 2022, Dr. Kuperstock's office submitted a prior authorization request on Plaintiff's behalf seeking coverage under the Plan for several medically necessary gender-

affirming facial reconstruction procedures related to Plaintiff's forehead, brow, nose, cheek, jaw, and chin.

44. On January 26, 2023, Cigna denied the prior authorization requests for all the gender-affirming facial reconstruction procedures requested by Dr. Kuperstock.

45. For each of the denied services, Cigna stated that "[t]he service […] requested is not covered" because "[f]acial feminization is not considered medically necessary as part of the treatment for Gender Dysphoria," citing MCP 0266 and the HUH Plan document. Cigna did not conduct any individualized medical necessity review for Plaintiff.

46. Following that denial, Plaintiff was unable to pursue the surgery because of her limited financial resources and her Plan's lack of coverage for the procedure.

47. The discriminatory denial of coverage for gender-affirming facial reconstruction has caused Plaintiff to experience prolonged, heightened symptoms of gender dysphoria related to her male-appearing facial characteristics, and attend harms to her health, functioning, and well-being.

48. In January 2023, Plaintiff called Cigna to ask about the Plan's coverage policy for gender-affirming facial surgeries. Instead of offering guidance, Cigna's representatives told Plaintiff that they did not know what she was talking about and laughed at her.

49. In December 2023, Plaintiff made a second attempt to seek coverage under the Plan by consulting with and obtaining updated documentation from her providers.

50. Plaintiff's therapist, Ms. Lawson, conducted a second surgical readiness assessment and once again determined that the requested surgeries were medically necessary and a critical intervention to treat Plaintiff's gender dysphoria and alleviate her associated anxiety, distress, and

other symptoms. On December 19, 2023, Lawson wrote Plaintiff a renewed letter of medical necessity and surgical readiness.

51. On December 20, 2023, Plaintiff's primary care provider, Dr. Caine, also wrote a renewed letter of support confirming that Plaintiff met the clinical criteria for gender-affirming facial reconstruction.

52. On December 26, 2023, Plaintiff's providers formally referred Plaintiff to Dr. Kuperstock for another surgical consultation. Dr. Kuperstock's office refused to schedule a consultation, explaining that doing so would be futile as long as the Exclusion applied to Plaintiff's Plan.

53. The Exclusion, as applied to claims under the Plan, has denied Plaintiff access to critical, medically necessary gender transition-related health care based on the false, medically rejected, and stereotypical presumption that, in every case, gender-affirming facial surgeries are purely cosmetic and not medically necessary.

54. Unless and until Defendants remove the Exclusion from the Plan, Plaintiff will be unable to obtain these important health treatments and will continue to suffer harms to her health, functioning, and overall well-being as a result.

55. Defendants retained and continue to retain the ability to amend the Plan to expressly require coverage for clinically indicated gender-affirming facial reconstruction, and thereby override the Exclusion contained in Cigna's MCP 0266, but have chosen not to do so.

***Plaintiff's Ongoing Need for Gender-Affirming Facial Reconstruction***

56. In April 2026, Britt Walsh, LICSW, LCSW-C, LCSW, CPH, the Director of Transgender Healthcare at Whitman-Walker, reassessed Plaintiff's medical need for gender-affirming facial reconstruction. Walsh had conducted an earlier assessment of Plaintiff in 2022.

57. Based on their thorough clinical evaluation of Plaintiff, Walsh concluded that it remains their "steadfast, professional opinion that [Plaintiff] is a strong candidate for facial gender confirmation surgery and this is considered medically necessary and clinically appropriate to improve her life."

58. Walsh noted that Plaintiff's gender-incongruent facial features, "in particular, the harsh bone structures that developed during a testosterone-fueled puberty—cause her acute emotional distress daily, and this distress is unmanageable via any other intervention." Walsh added, "This distress is debilitating and detrimental to [Plaintiff's] mental health and occupational functioning," noting that other gender-affirming treatments, specifically hormone therapy, were ineffective in treating the face-related dysphoria "as the bones are unaffected by exogenous estrogen supply."

59. Walsh described this surgery as "a critical intervention" for Plaintiff as it "will make it possible for her to be physically identified as a woman, via softening the rigid features of her masculine-coded bone structure," that consistently "[b]eing seen as a woman will improve her ability to navigate in social and occupational spheres," and that the requested procedures would both treat Plaintiff's gender dysphoria and "decrease the negative impact of the high levels of stigmatization, discrimination, and victimization that she experiences as a result of her perceived transgender identity, in other words, being clocked as trans by passer[s]by." "Without surgical intervention," Walsh determined, Plaintiff "will continue to experience distress, social anxiety, and fear for her safety."

60. Based on this assessment, and the determination that Plaintiff satisfied the WPATH Standards of Care clinical criteria for these surgeries, Walsh wrote Plaintiff a renewed letter of support for surgery in April 2026.

61. Unless Defendants amend the Plan or otherwise direct Cigna to process claims for gender-affirming facial reconstruction without reference to the Exclusion, however, Plaintiff's prospective surgeons will refuse to consider surgery for her, and she will be unable to afford it on her own.

***Plaintiff Properly Exhausted Administrative Remedies Before Initiating this Action***

62. On September 30, 2024, Plaintiff, through counsel, submitted Charges of Discrimination against Defendants with the D.C. Office of Human Rights ("OHR") and the United States Equal Employment Opportunity Commission (the "EEOC").

63. On February 6, 2025, Plaintiff requested that her charge be withdrawn from OHR and requested Notices of Right to Sue from the EEOC.

64. On May 6, 2025, the EEOC issued Plaintiff Notices of Right to Sue HUH and DCNA.

65. In 2025, even after Plaintiff filed her charges of discrimination and put Defendants on notice of this unlawful policy, HUH and DCNA negotiated a new collective bargaining agreement without making any changes to Plan benefits for gender-affirming facial surgeries.

66. All other jurisdictional prerequisites to the filing of this suit have been met.

**INJURIES TO PLAINTIFF**

67. Plaintiff has been injured by the past and ongoing inability to obtain medically necessary gender-affirming facial reconstruction procedures because of (1) the enforcement of a discriminatory coverage exclusion on those procedures under the Plan by HUH's third-party administrator, Cigna, acting under its authority delegated by HUH; and (2) the failure of Defendants HUH and DCNA to remove this discriminatory barrier to gender-affirming services for transgender Plan participants despite knowledge that it is discriminatory.

68. With the exclusion in place, Plaintiff is and will remain unable to obtain insurance coverage for the gender-affirming facial reconstruction procedures deemed clinically appropriate by her treating providers consistent with the prevailing standards of care.

69. Without this coverage, Plaintiff is experiencing and will continue to experience untreated gender dysphoria related to her male-appearing facial features, associated distress and impairments to her mental health, social and occupational functioning, and quality of life.

## CAUSE OF ACTION

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

70. Plaintiff repeats and incorporates by reference all of the allegations set forth above.

71. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" on that same basis. 42 U.S.C. § 2000e-2(a)(2).

72. Title VII also makes it unlawful for a labor organization to discriminate against an individual because of that individual's sex, including by "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual" in violation of Title VII. 42 U.S.C. § 2000e-2(c).

73. By the actions described above, Plaintiff was subjected to differential and inferior terms and privileges of her employee benefits under the Plan because of sex.

74. Plaintiff has been, and continues to be, injured by Defendants' discriminatory conduct complained of herein and has suffered damages as a result.

75. Defendants' actions were and continue to be willful, wanton, malicious, and carried out with reckless disregard of Plaintiff's known civil rights under the law.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter a declaratory judgment that Defendants' conduct complained of in this Complaint violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

2. Enter a permanent injunction enjoining and restraining Defendants and their agents, including the Plan's third-party administrator, from enforcing Cigna's standard plan exclusion on gender-affirming facial reconstruction procedures for claims for such procedures sought by Plaintiff or other Plan participants;

3. Award compensatory damages in an amount to be calculated by a jury that would fully compensate Plaintiff for her actual and nonpecuniary damages resulting from Defendants' unlawful conduct, including but not limited to emotional distress, the health consequences of her untreated gender dysphoria, out-of-pocket damages, and other compensable injuries that have been caused by the Defendants' conduct complained of herein;

4. Award Plaintiff punitive damages in an amount that would deter Defendants from engaging in future conduct that would deprive Plaintiff and other transgender individuals of their known civil rights under the law;

5. Award Plaintiff her reasonable attorneys' fees and costs (including expert witness fees) under 42 U.S.C. § 2000e-5(k); and

6. Award such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues in this case.

DATED: September 30, 2026

Respectfully submitted,

*/s/ Joseph J. Wardenski*

Joseph J. Wardenski (D.C. Bar No. 995549)
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com

Alyssa Lareau (D.C. Bar No. 494881)
WARDENSKI P.C.
300 New Jersey Avenue NW, 3rd Floor
Washington, D.C. 20001
(202) 935-4224
alyssa@wardenskilaw.com

*Attorneys for Plaintiff Stacy Soe*